UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MCKENZIE, individually and doing business as AMERICAN IMAGE ART, an unincorporated dba,<br><br>        Plaintiff,<br><br>  v.<br><br>ARTISTS RIGHTS SOCIETY, INC., and JANET HICKS,<br><br>        Defendants. | Case No. 22-cv-01619-MKV<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT** |

Defendants Artists Rights Society, Inc. ("ARS") and Janet Hicks ("Ms. Hicks"; together with ARS, "Defendants") hereby oppose the application of plaintiff Michael McKenzie ("Plaintiff") for a default.

## PRELIMINARY STATEMENT

Plaintiff seeks a default after failing to adequately serve Defendants and filing two affidavits of service that are inaccurate at best and falsified at worst. Defendants were unaware of the service attempt until well after it was completed, given that Ms. Hicks—the target of the ill-fated attempt—was out of the country when Plaintiff supposedly served her and is not often in the ARS offices anyway. Defendants should not be deprived of an opportunity to answer and defend themselves against Plaintiff's baseless claims, and Plaintiff should face consequences for filing two blatantly misleading documents with this Court.

## BACKGROUND

Plaintiff commenced this action on February 27, 2022, by filing a two-count complaint against the Defendants for (i) alleged violations of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A)–

1

(B); and (ii) alleged violations of the RICO statute under 18 U.S.C. § 1962. *See* ECF. No. 1. The complaint names ARS as well as Ms. Hicks personally.

Ms. Hicks is the Vice President, Director of Licensing for ARS. Declaration of Janet Hicks ("Hicks Decl.") ¶ 1. Plaintiff, according to his affidavits of service (ECF. Nos. 10 & 11), personally served the complaint in this action on Ms. Hicks in her individual capacity and as representative of ARS on May 24, 2022, at the offices of ARS in New York City. *See id.* ¶ 2. This is false. *Id.* On May 24, 2022, not only was Ms. Hicks out of the office, but she was also out of the country. *Id.* ¶ 5. She was traveling abroad in Norway at a conference in Oslo, and if requested, would provide documentary proof of this fact. *Id.* Accordingly, the process server could not have personally served the complaint on her (let alone twice) as he has sworn he did. *Id.*

Indeed, Ms. Hicks has spoken with ARS's receptionist, Robert Dunkin, who was present on May 24, 2022, and he said someone came to the office who said he "had something" for Ms. Hicks, and simply handed it to Mr. Dunkin. *Id.* ¶ 6. The person did not ask for a description of Ms. Hicks and did not give any further details about the delivery. *Id.* Mr. Dunkin is not authorized to accept service of legal documents. *Id.* ¶ 7. Curiously, both affidavits of service include a physical description of Ms. Hicks (a blond woman) even though the process server could not possibly have seen her in person and would only have seen Mr. Dunkin (a brunette man). *Id.* ¶ 8. For the Court's information, the Plaintiff has personally seen Ms. Hicks before when she was deposed in connection with his litigation against Morgan Art Foundation and so would already know what she looks like. *Id.* The affidavits of service both also indicate that Ms. Hicks was asked about whether she serves in the military; this is also false given that no process server ever spoke to her. *Id.* ¶ 9.

Ms. Hicks did not discover the supposedly served copy of the complaint until well after her return from Europe, particularly given that she is not regularly in the office. *Id.* ¶ 10. Like many at ARS, she works a hybrid schedule due to the COVID-19 pandemic and is not regularly at her desk. *Id.* Moreover, there have been recent staffing changes in ARS's legal department, further contributing to the unfortunate delay in Defendants' discovering that Plaintiff had attempted to serve this complaint. *Id.* ¶ 11.

The court should deny Plaintiff's request to hold the Defendants in default given Plaintiff's failure to properly serve the complaint, Defendants' justifiable reason for not realizing that service had been attempted, and because of Plaintiff's (and Plaintiff's process server's) apparently dishonest tactics in doing so.

## ARGUMENT

"Default judgment is an extreme sanction that is disfavored in the Second Circuit." *Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 383 (S.D.N.Y. 2013). Entering a default—let alone a default judgment—against Defendants is inappropriate because Defendants were never served, and the information provided in Plaintiff's affidavits of service is false. Defendants are prepared to defend themselves in this action, which should be decided on the merits (or rather, lack thereof), not a technicality of the Plaintiff's own making.

Default judgments are disfavored, particularly where the default was not willful, because public policy strongly favors the resolution of disputes on their merits. *Pecarsky v. Galaxiworld*, 249 F.3d 167, 172 (2d Cir. 2001); *Heidi & Hans-Jurgen KochGBR v. Blue Label Sols. LLC*, 2021 WL 5647793 (S.D.N.Y. Dec. 1, 2021); *In re Rates-Viper Patent Litig.*, 2011 WL 336254, at *1 (S.D.N.Y. Feb. 1, 2011). While Defendants are not yet in default, it bears mentioning that per Federal Rule 55(c), "[t]he court may set aside an entry of default for good cause," and good cause "should be construed generously." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1991).

3

Indeed, even when deciding a motion to vacate a default judgment, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).

The three factors that courts consider when determining whether to vacate a default all weigh in favor of the Defendants, namely: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *In re Rates-Viper Pat. Litig.*, 2011 WL 336254, at *1 (S.D.N.Y. Feb. 1, 2011). Again, while these factors are not directly relevant given that no default has yet been entered, they all weigh in Defendants' favor and counsel for the denial of Plaintiff's request for a default.

*First*, Defendants did not willfully default because—due to Plaintiff's playing fast-and-loose with service of process (and sworn affidavits regarding the same), ARS's legal department turnover, and Ms. Hicks' limited in-office presence—they were unaware until very recently of any clock running on Plaintiff's pending action against them. *See supra*; Hicks Decl. ¶¶ 4-11; *Criollo v. NY Fine Interiors Inc.*, 2021 WL 1200318, at *10 (E.D.N.Y. Mar. 3, 2021) ("[T]he relevant inquiry for determining willfulness relates to the defaulting party's actions after it became aware of the existence of the litigation or entry of default."). *See also In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013). The fact that this opposition is being filed shortly after Plaintiff's motion for default further "supports a finding that [Defendants' alleged] default was not willful because it evidences an intention and attempt to defend against the action." *Antolini v. McCloskey*, 2020 WL 8679705, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting *Courchevel 1850 LLC v. Rodriguez*, 2019 WL 2233828, at *5 (E.D.N.Y. May 22, 2019) (internal quotation marks omitted)).

*Second*, an entry of default would severely and unfairly prejudice Defendants by depriving them of an opportunity to defend themselves against Plaintiff's serious (albeit specious) claims, while denying Plaintiff's request for default would not prejudice him at all. Indeed, if this case is permitted to proceed, the extent of the harm to the Plaintiff will be merely a minor delay in responding to the complaint, which is insufficient on its own to establish prejudice. *See Heidi*, 2021 WL 5647793 at *4. Plaintiff must show additional harm resulting from delay such as "the loss of evidence, … increased difficulties of discovery, or … greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907 (2d. Cir. 1983) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil*, § 2693 at 536-37 (1983)). Plaintiff has no basis to show these types of harm.

*Third*, Defendants have and will assert meritorious defenses. It is not necessary at this point for Defendants to "conclusively establish the validity of the defense[s] asserted." *S.A.S.U. Ateliers Jean Nouvel v. 45 Park Place Partners, LLC*, 2020 U.S. Dist. LEXIS 175764, at *3 (S.D.N.Y. Sept. 24, 2020). Rather, "the test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense…. The defaulting defendant need only meet a low threshold to satisfy this factor." *Antolini*, 2020 WL 8679705, *6-7 (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)) (internal quotation marks omitted).

Here, Defendants have many possible defenses that, if proven by motion or at trial, would constitute complete defenses to the accusations raised in the complaint. For instance, Plaintiff's claims are time-barred; Plaintiff has no standing and no damages given that he never had rights to Robert Indiana's "LOVE"; Morgan Art Foundation has trademark rights in "LOVE" and granted the same to Defendants, upon which Defendants were entitled to rely, so there is no false

designation of origin; ARS reasonably relied on grants of copyright rights from Morgan Art Foundation; Ms. Hicks is not individually liable; and Plaintiff will not be able to satisfy the predicate act or *mens rea* requirements of the RICO statute, let alone establish any criminal liability against either of the Defendants. All of these are complete defenses.

Defendants are happy to provide further briefing on the above-mentioned defenses should the Court request it. However, given that Plaintiff has not yet even secured a default, the Court should deny Plaintiff's motion simply because service was improper (and misrepresented), because Defendants have appeared, and because default judgments are highly disfavored.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for default. If the Court agrees and denies Plaintiff's motion, Defendants respectfully request 30 days from the resolution of this motion to answer, move, or otherwise respond to the complaint. Defendants also reserve the right to seek sanctions against Plaintiff, including by way of the Court's inherent powers, for the filing of two false affidavits of service.

Respectfully Submitted,

Dated: New York, New York
      June 28, 2022

/s/ Scott J. Sholder
Scott J. Sholder, Esq.
COWAN DEBAETS ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
(212) 497-7474
ssholder@cdas.com
*Attorneys for Artists Rights Society, Inc.*