UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MCKENZIE, INDIVIDUALLY AND DOING BUSINESS AS AMERICAN IMAGE ART, AN UNINCORPORATED DBA,<br><br>   Plaintiff,<br><br>vs.<br><br>ARTISTS RIGHTS SOCIETY, INC., AND JANET HICKS,<br><br>   Defendants. | Case No.: 1:22-cv-01619-MKV |

## **DEFENDANTS ARTIST RIGHTS SOCIETY, INC. AND JANET HICKS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Scott J. Sholder, Esq.
Benjamin S. Halperin, Esq.
Cowan, DeBaets, Abrahams,
& Sheppard, LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Artists Rights Society, Inc. and Janet Hicks*

Table of Contents

Table of Authorities .................................................................................................................. ii

ARGUMENT .............................................................................................................................. 1

I.   PLAINTIFF'S CLAIMS ARE ALL TIME-BARRED. ........................................... 3

II.  PLAINTIFF FAILED TO STATE A LANHAM ACT CLAIM. ............................ 6

III. PLAINTIFF FAILED TO STATE A RICO CLAIM. ............................................. 8

CONCLUSION ......................................................................................................................... 10

# Table of Authorities

Cases                                                                                                                              Page(s)

*Alix Partners v. McKinsey & Co.*,
  23 F.4th 196 (2d Cir. 2022) .................................................................................... 10

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................................ 9-10

*Bankers Trust Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) .................................................................................... 5

*Bingham v. Zolt*,
  66 F.3d 553 (2d Cir. 1995) ...................................................................................... 5, 6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ................................................................................................ 6-7

*EFS Mktg., Inc. v. Russ Berrie & Co.*,
  76 F.3d 487 (2d Cir. 1996) .......................................................................................... 7

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018) ................................................................................. 9, 10

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*,
  2022 WL 901660 (S.D.N.Y. Mar. 28, 2022) ............................................................. 4

*Flexborrow LLC v. TD Auto Fin. LLC*,
  255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................................. 8, 9

*Hustlers, Inc. v. Thomasson*,
  2004 WL 3241667 (N.D. Ga. Dec. 29, 2004) .......................................................... 7

*In re Merrill Lynch Ltd. P'ships Litig.*,
  154 F.3d 56 (2d Cir. 1998) ............................................................................. 3, 4, 5

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) ................................................................................................. 4

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ..................................................................................... 5

*Lipton v. The Nature Co.*,
  71 F.3d 464 (2d Cir. 1995) ....................................................................................... 7

*Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*,
    624 F. App'x 23 (2d Cir. 2015) .................................................................................... 5

*Massone v. United States Dep't of Just.*,
    2020 WL 3000416 (S.D.N.Y. June 4, 2020) ................................................................ 1

*Parks v. ABC, Inc.*,
    341 F. App'x 737 (2d Cir. 2009) .................................................................................. 6

*Restellini v. Wildenstein Plattner Inst., Inc.*,
    2021 WL 4340824 (S.D.N.Y. Sept. 22, 2021) .............................................................. 6

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.*,
    1994 WL 406103 (S.D.N.Y. July 29, 1994),
    a*ff'd,* 55 F.3d 756 (2d Cir. 1995) ................................................................................. 1

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y.),
    *aff'd*, 579 F. App'x 7 (2d Cir 2014) ............................................................................. 3

**Statutes**

17 U.S.C. § 9 .................................................................................................................... 2

17 U.S.C. § 102(a) ........................................................................................................... 2

Plaintiff's opposition brief ("Opp.") fails to refute that his claims must be dismissed because they are untimely, implausible, and fail as a matter of law. Instead, as shown below, Plaintiff's arguments are predicated on unsubstantiated legal conclusions, misunderstanding of basic legal principles inherent in copyright and trademark law, inapplicable case law, and rank speculation. Defendants' motion to dismiss should be granted in its entirety.

## ARGUMENT[1]

Plaintiff fails to controvert that (1) his claims are all untimely; and (2) both his Lanham Act and RICO claims fail as a matter of law.

As a threshold issue, Plaintiff spills much ink arguing the merits of whether *LOVE* is in the public domain. (Opp. at 4, 7, 9, 10.) But whether *LOVE* is or is not in the public domain is not an issue that the Court must decide to grant the ARS Defendants' motion. The ARS Defendants merely pointed out that the legal conclusion that *LOVE* is in the public domain does not need to be taken as true. *See, e.g.*, *Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 1994 WL 406103, at *5 (S.D.N.Y. July 29, 1994), *aff'd*, 55 F.3d 756 (2d Cir. 1995) (holding that entry of a work into the public domain is a question of law); *Massone v. United States Dep't of Just.*, 2020 WL 3000416, at *1 (S.D.N.Y. June 4, 2020) (in a complaint with factual allegations and legal conclusions, the legal arguments "do not receive the same favorable treatment, even at the motion to dismiss stage"). And in fact, the disputed nature and complexity of the issue underscore that the ARS Defendants did not act fraudulently with scienter. (Mot. at 20-21.) Even if the Court accepts that allegation as true—which it should not, because it is a (meritless) legal conclusion—the ARS Defendants' motion should be granted for the independent reasons stated below and in the opening brief.

---

[1] Capitalized and undefined terms used herein shall have the same meaning as in the ARS Defendants' opening brief. All emphasis is added to, and citations omitted from, legal citations herein unless otherwise indicated.

In any event, several of Plaintiff's points on this issue warrant a brief response. **First**, lack of copyright registration is not proof that there is no copyright in *LOVE*. (*See.* Opp. at 9). Under the 1909 Copyright Act (which applies to *LOVE*), no registration was needed for copyright protection, just proper publication with notice. 17 U.S.C. § 9 (repealed). Additionally, Plaintiff continues to erroneously claim that he never "copyrighted" *HOPE* (*see* Opp. at 2), when for works like *HOPE* that were created after January 1, 1978 (and fall under the current Copyright Act), copyright automatically vests upon fixation, and a registration is only needed to sue for infringement. 17 U.S.C. § 102(a). Thus, *HOPE* **is** copyrighted and Plaintiff's argument that he could not have "honestly" claimed so (and thereby removed *LOVE*'s alleged unfair advantage) is wrong as a fundamental principle of copyright law. (*See* Opp. at 2; AC ¶ 23.)

**Second**, Plaintiff attempts to support his position by claiming that Morgan did not assert *LOVE* to be copyrighted in related litigation but does not supply a complete record of all relevant statements in that proceeding. (*See* Opp. at 9-10.) In any event, this argument is contradicted by Plaintiff's repeated allegations that Morgan **does state** that *LOVE* is copyrighted on the Indiana website (and represented same in the ARS Agreement). (*See id.* at 11-12, 15, 18-20; AC ¶¶ 67-68, 76, 83.) Finally, the litigation excerpt Plaintiff provides does not state that Morgan believes *LOVE* is in public domain, only that several unrelated works are copyrighted. (*See* Opp. at 10.)

**Third**, Plaintiff concedes that the popularity of *LOVE* is what enhanced the work's marketability, not the copyright notice. (*See* Opp. at 5.) This is the crux of the case: *LOVE*'s notoriety and beloved status—which Plaintiff concedes "was instant" (*id.* at 2), and that LOVE was "highly prized" (*id.* at 1)—is what perpetuates its marketability, not a boilerplate copyright notice nor its perception as being protected by copyright. Plaintiff's position is simply implausible even assuming *LOVE* and *HOPE* were in competition (which the ARS Defendants do not concede).

## I.      PLAINTIFF'S CLAIMS ARE ALL TIME-BARRED.

Plaintiff fails to show that his Lanham Act and RICO claims are timely. Most notably, Plaintiff does not even attempt to overcome the fact that he previously alleged that everyone in the art world knew since the 1960s that *LOVE* is supposedly in the public domain, yet impermissibly reversed this allegation in his AC after the ARS Defendants raised a statute of limitations defense in their pre-motion letter. (Mot. at 14.) That is reason alone to find Plaintiff's claims untimely.

***RICO.*** The ARS Defendants previously explained that civil RICO claims have a four-year statute of limitations that "begins to run when the plaintiff discovers or should have discovered ***the RICO injury***." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58-60 (2d Cir. 1998) ("The first step in the statute of limitations analysis is to determine when the … alleged injury" was sustained, and then "when [Plaintiff] discovered or should have discovered the injury and begin the four-year statute of limitations period."). (Mot. at 5.) The ARS Defendants showed that Plaintiff was "on inquiry notice of the alleged injury" well before February 27, 2018 (four years prior to filing), so his claims are time-barred. (*Id.*) *See Merrill Lynch*, 154 F.3d at 58-60.

While Plaintiff argues that the factual question of his awareness of his injury cannot be decided now (Opp. at 17), that is incorrect. Courts commonly dismiss claims as untimely on Rule 12 motions; like any allegation, claims of timeliness and injury discovery must be plausible to survive a motion to dismiss. *See, e.g.*, *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 436 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir 2014) (claims could not survive statute of limitations defense where plaintiff could not "plausibly" allege that their claims fell within an exception). Here, Plaintiff's allegation that he did not discover his injury until a 2020 deposition is ***implausible*** given his other allegations regarding the popularity of *LOVE*, the alleged ubiquity of the allegedly false statements going back to at least 1999, and Plaintiff's supposedly unique position as a major

3

player in the art market with a close connection to *LOVE* and Indiana. (Mot. at 9.) Plaintiff does not seriously challenge any of this.

Instead, Plaintiff attempts to rely on the continuing wrong or "separate accrual" doctrine (Opp. at 17), but that principle has no application here. For starters, the Supreme Court has done away with the exact standard that Plaintiff asks this Court to follow. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997). In *Klehr*, the Supreme Court invalidated the "last predicate act" rule, which a civil RICO plaintiff had relied on to attempt to salvage claims based on decades-old conduct, arguing that the "last predicate act" that was part of the same pattern of alleged racketeering activity caused the claim to accrue. *Id.* The Court explained that application of the last predicate act rule created a limitations period that was "longer than Congress could have contemplated" and could continue indefinitely, which would encourage plaintiffs to wait to bring suit until treble damages accrued. *Id.*; *see also, e.g.*, *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022 WL 901660, at *19 (S.D.N.Y. Mar. 28, 2022) (dismissing RICO claims as untimely, rejecting "last predicate act" rule per *Klehr*).

Moreover, the law is clear that the relevant "discovery" for purposes of RICO claim accrual is the discovery of the plaintiff's ***injury***, not discovery of new alleged predicate acts or a "continuous course of conduct," as Plaintiff argues. (*See* Opp. at 16.)[2] In other words, the discovery-accrual rule would only restart the statute of limitations "each time a plaintiff discovers or should have discovered ***a new and independent injury***." *Merrill Lynch*, 154 F.3d at 59. Here, Plaintiff's alleged injury is a single ***continuous*** unfair competition injury—i.e., the alleged increase of *LOVE*'s value and consequent decrease of *HOPE*'s value—that allegedly began more than 20 years ago, or at the latest, when *HOPE* allegedly began competing with *LOVE* 15 years

---

[2] Plaintiff seems to acknowledge this, hedging that he would only be entitled to "damages for any harm caused by conduct occurring in the last four years before the filing of this action." (Opp. at 16.)

4

ago. (*See, e.g.*, AC ¶¶ 23-40, 87-99.) Plaintiff does not allege that, for example, he lost a certain dollar amount in licensing fees each time the ARS Defendants sold a *LOVE* license within the last four years—and even if that claim were implicit in the AC, it would not be plausible.

Thus, this case is not like *Bankers Trust* or *Bingham* (relied on by Plaintiff, *see* Opp. at 16-17), where there were discrete repeated injuries. *See Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995) (defendants used a "variety of schemes" and "frequent misappropriations of money from different sources"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (adopting the separate accrual rule and holding that it applies for RICO purposes each time a plaintiff discovers or should have discovered a new injury). Rather, it is more akin to *Merrill Lynch*, where the defendant's fee collections "in later years [could not] be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme." 154 F.3d at 59-60. As the Second Circuit explained, even in *Bankers Trust* and *Bingham*, "the injury had to be **new and independent** to be actionable." *Id.* at 59; *see also Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 27 (2d Cir. 2015) (subsequent acts which did not separately injure plaintiff did not make RICO claims timely when initial injury was untimely).

Accordingly, the separate accrual rule does not apply, and Plaintiff's RICO claims are time-barred. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150-51 (2d Cir. 2012) ("The RICO statute of limitations … runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry" and that would cause "a person of ordinary intelligence [to] consider it 'probable' that fraud had occurred").

**Lanham Act.** Plaintiff barely addresses whether his Lanham Act claims are barred by laches (*see* Mot. at 10-11), arguing only that laches cannot be decided on a motion to dismiss (*see* Opp. at 15). However, the ARS Defendants' cited authority "did allow such dismissal," as Plaintiff

5

concedes. (*Id.*; *see also* Mot. at 10 (citing *Parks v. ABC, Inc.*, 341 F. App'x 737 (2d Cir. 2009)).) In attempting to distinguish *Parks*, Plaintiff conflates the copyright and trademark aspects of that case and ignores the fact that it is **Plaintiff's** burden to show that his delay was excusable and that the ARS Defendants were not prejudiced. Like the plaintiff in *Parks*, Plaintiff has not even addressed, let alone carried his burden on this issue. *See id.* at 739. Accordingly, the Court should dismiss Plaintiff's Lanham Act claims based on the doctrine of laches.

## II. PLAINTIFF FAILED TO STATE A LANHAM ACT CLAIM.

Plaintiff has failed to show that his Lanham Act claims are adequately pleaded.

*First*, while Plaintiff argues that he has identified advertising that was "literally false as a factual matter" (*e.g.*, Opp. at 10), the alleged falsity Plaintiff points to (which need not be accepted as true because it is a legal conclusion) is not actionable under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* and its progeny hold that representations regarding authorship and/or copyright ownership are not actionable under the Lanham Act, period. *See, e.g.*, *Restellini v. Wildenstein Plattner Inst., Inc.*, 2021 WL 4340824, at *7-9 (S.D.N.Y. Sept. 22, 2021) (allegedly false statements "must do more than falsely represent that the [defendants were] authorized to use or distribute" the work). Here, as shown in the opening brief and AC itself, the falsity Plaintiff alleges concerns only copyright authorship/ownership.

Plaintiff argues that *Dastar* only applies to claims by the authors of the work at issue themselves (Opp. at 12), but that is demonstrably false. As the ARS Defendants showed in their opening brief, courts in this District (and elsewhere) have relied on *Dastar* to dismiss claims exactly like Plaintiff's. *See, e.g.*, *Restellini*, 2021 WL 4340824, at *7-9 (dismissing counterclaim regarding false representation of authorship/ownership by non-author competitor, explaining that statements concerning authorship/ownership and "lack of copyrightability" are not actionable

under *Dastar*); *Hustlers, Inc. v. Thomasson*, 2004 WL 3241667, at *3 (N.D. Ga. Dec. 29, 2004) (rejecting claim by non-author music publisher "based solely on the allegation that the ownership of the copyrights to certain musical compositions was incorrectly attributed" as barred by *Dastar*).[3] Moreover, while Plaintiff appears to abandon his false designation of origin claim and focuses on his false advertising claim (*see* Opp. at 8-15), courts have made resoundingly clear that the *Dastar* rule applies to false advertising claims as well (Mot. at 11-12 (collecting cases)).

**Second,** Plaintiff fails to show that the ARS Defendants engaged in any advertising per the Lanham Act. Plaintiff does not respond to the ARS Defendants' argument that a copyright notice on licensed goods, in and of itself, is not an advertisement (*see* Mot. at 18), and instead merely parrots this baseless argument (*see* Opp. at 8). Plaintiff's only other allegation of advertising activity is that, on RobertIndiana.com, **Morgan**—not the ARS Defendants—stated that LOVE is copyrighted. (*See* Opp. at 9; AC ¶ 67.) Plaintiff does not allege—nor could he—that the ARS Defendants control or operate the Indiana website, which Plaintiff concedes is maintained by "Morgan [and] its agents." (Opp. at 9; n.7.) And his vague reference to the copyright notice appearing "in other promotional licensing materials" (*id.* at 9) is stated with no citation to the AC or any other proof. This is mere speculation and should be disregarded under *Twombly* and *Iqbal*.

**Third,** Plaintiff comes nowhere close to refuting that he has failed to plead proximate causation. As the ARS Defendants explained, Plaintiff's causation theory is inherently implausible because it assumes that free-market actors who had wanted to license the popular *LOVE* image would have chosen to license the less popular *HOPE* image from Plaintiff rather than simply use

---

[3] Plaintiff cites *Lipton v. The Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) and *EFS Mktg., Inc. v. Russ Berrie & Co.*, 76 F.3d 487 (2d Cir. 1996), pre-*Dastar* cases that hold that a false copyright notice itself ***does not*** constitute a false designation origin under the Lanham Act. And Plaintiff's puzzling focus on the size of the copyright notice at issue here as compared to *EFS* is inapposite. (*See* Opp. at 15.) The one visual example of such a notice Plaintiff provides is in tiny print on the bottom of a small tchotchke. (*See id.*; AC ¶ 40.)

7

*LOVE* for free if they had known that it was supposedly not copyrighted. (Mot. at 14.) Plaintiff argues that "materiality and consumer deception" can be "presumed" given the alleged "literal[] fals[ity]" (Opp. at 13), but even if that were correct here (it is not),[4] the issue is not that Plaintiff has failed to plead that **members of the public** were deceived, but rather that he failed to plausibly plead that he was injured **by this**. Plaintiff argues that *HOPE* and *LOVE* were competing for "the same cache" of licensee dollars (Opp. at 14), but that does not controvert that rational licensees would have simply used the work they preferred for free under Plaintiff's own public domain theory. Moreover, Plaintiff fails to controvert that if *LOVE*'s copyright notice really created an unfair advantage, he could have undone that advantage by asserting the same for *HOPE*. Plaintiff's belief that *HOPE* cannot be or is not copyright protected is erroneous, as explained in the opening brief and above. (Mot. at 5 n.6.) Finally, Plaintiff fails to overcome the clear legal authority (and plain fact) that boilerplate copyright notices are not material to consumer decisions. (*Id.* at 13.)

### III.     PLAINTIFF FAILED TO STATE A RICO CLAIM.

Plaintiff similarly fails to show that his RICO claims should not be dismissed.

***First***, Plaintiff has not adequately pleaded scienter under Rule 9(b).[5] Initially, Plaintiff sidesteps this issue by treating *LOVE*'s alleged public domain status as a matter of established fact rather than a legal conclusion, stating that it "clearly turns out" that *LOVE* is in the public domain (Opp. at 19), when there has been no ruling on that issue. Without this crutch, Plaintiff's claims fall far short of pleading facts that show a strong inference of knowledge of falsity and intent to defraud. Repeated assertions that defendants "well knew" of the alleged public domain status of *LOVE* do not come close to the required 9(b) standard. *See Flexborrow LLC v. TD Auto Fin. LLC*,

---

[4] The Court need not presume materiality or deception because Plaintiff has failed to establish that the ARS Defendants made any literally false statements. (*See* Opp. at 11.) As noted above, Plaintiff's arguments (and claims) wholly depend on the underlying allegation that *LOVE* is in the public domain, when the Court need not take as true.
[5] Plaintiff refers to this as "Rule 9(g)" in his Opposition (Opp. at 17) but presumably means Rule 9(b).

8

255 F. Supp. 3d 406, 423-23 (E.D.N.Y. 2017) (merely asserting that a defendant must have been aware of alleged fraud does not support a finding of scienter in a RICO action). All the RICO predicate acts that Plaintiff alleges (including money laundering and illegal transactions[6]) require scienter, which has not been adequately pleaded for any of them. (Mot. at 21-22.)

*Second*, Plaintiff failed to plead specific instances of mail or wire fraud by the ARS Defendants as needed under Rule 9(b). The only specific allegedly fraudulent statement Plaintiff points to is a statement on the Robert Indiana website, which he concedes was made by Morgan, not the ARS Defendants. (*See* Opp. at 18.) Otherwise, Plaintiff only repeats the AC's allegations in lengthy block quotes, which does not solve that those allegations themselves are vague and fail to plead specific transactions. (*See id.* at 20-21 (long block quote alleging, for example, "many hundreds of licenses thus fraudulently procured").) Moreover, the ARS Defendants have not "confuse[d] two of RICO's requirements" as Plaintiff argues. (Opp. at 19.) The issue is that Plaintiff alleges repeated underlying acts of, *inter alia*, mail and wire fraud but fails to identify any of them (other than a single statement not made by the ARS Defendants) with particularity. (Mot. at 22-23.) It is clear that "[w]hen alleging fraudulent activities as predicate acts for a RICO claim, a plaintiff must satisfy the particularity requirements of" Rule 9(b). *E.g.*, *Flexborrow,* 255 F. Supp. 3d at 420. If Plaintiff is arguing he only needs to allege a general fraudulent scheme and not the alleged underlying transactions with particularity, he provides no authority for that position.

*Third,* Plaintiff fails to plead proximate causation because he is impermissibly alleging a second-hand market injury. (Mot. at 23-25.) Defendants demonstrated that the Supreme Court and Second Circuit have repeatedly rejected similarly indirect RICO injury theories. (*Id.* (citing, *e.g.*,

---

[6] The ARS Defendants maintain that any allegation of commission of crimes is preposterous as a matter of principle given their impeccable reputation in the art world, having represented, and earned the trust of numerous prominent artists and artists' estates and foundations, including those of Picasso, Matisse, Jackson Pollock, and Andy Warhol.

9

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006); *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 142 (2d Cir. 2018)). This case is the same. Although Plaintiff claims that *LOVE* and *HOPE* are "the two most popular Indiana images" (Opp. at 25) and direct competitors, Plaintiff's injury theory inherently depends on the intermediate step of free-market licensees choosing to license *LOVE* rather than *HOPE* due to the copyright assertion—which is speculative and implausible as shown above and in the Motion. It is far more plausible that LOVE achieved more success in the market because it is the far more well-known and appreciated work.[7]

Plaintiff's reliance on *Alix Partners v. McKinsey & Co.*, 23 F.4th 196 (2d Cir. 2022) (cited in Opp. at 24-25), is misplaced. There, the court held that due to the insular nature of the bankruptcy court advisory business, plaintiff plausibly alleged that the fraud directly took away its ability to bid for work where no "Bankruptcy Court would have approved [defendant's] retention if [plaintiff's] allegations were substantiated." *Id.* at 209-10. But the court explicitly narrowed its holding on proximate cause to its facts given that the integrity of the courts was being questioned: "The fact that this case invokes our supervisory responsibilities makes our resolution of it *sui generis* and **of little, if any, application to 'ordinary' RICO cases** where these responsibilities are not front and center." *Id.* The cases the ARS Defendants cited (e.g., *Anza*, *Empire Merchants*) rejecting indirect alleged injuries like Plaintiff's in less niche markets are on point.

***Finally,*** Plaintiff does not address his RICO conspiracy claim, which fails for the reasons set forth in Defendants' opening brief.

## CONCLUSION

The AC should be dismissed with prejudice. (*See* ECF. No. 22 ("This will be Plaintiff's last opportunity to amend in response to any issue raised in the parties' pre-motion letters.").)

---

[7] *HOPE* was made for the 2008 Obama campaign (AC ¶ 54), and necessarily has had far less relevance over time.

Dated: New York, New York

    February 13, 2023

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Scott J. Sholder

Scott J. Sholder, Esq.
Benjamin S. Halperin, Esq.
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Artists Rights Society, Inc. and Janet Hicks*