UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL MCKENZIE, individually and
doing business as AMERICAN IMAGE ART,
an unincorporated dba,

                              Plaintiff,

                -v.-

ARTISTS RIGHTS SOCIETY, INC. et al.,

                              Defendants.

---

22 Civ. 1619 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

Plaintiff Michael McKenzie ("McKenzie," or "Plaintiff"), individually and doing business as American Image Art ("American Image"), sues Defendants Artists Rights Society, Inc. ("ARS"), Vice President of ARS Janet Hicks ("Hicks"), Morgan Art Foundation Ltd. ("Morgan"), Morgan's Director Philippe Grossglauser, and Morgan's New York agent Simon Salama-Caro for (1) false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B), and (2) a racketeering enterprise and conspiracy in violation of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* ECF No. 25 (Am. Compl.).[1] Defendants ARS and Hicks (collectively, the "ARS Defendants")[2] move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 26. For the reasons stated below, the motion is GRANTED.

## I.        BACKGROUND[3]

---

[1] The case was originally assigned to the Honorable Analisa Torres. It was reassigned to the Honorable Mary Kay Vyskocil and then to this Court.

[2] Defendants Morgan, Grossglauser, and Salama-Caro were also named in the Amended Complaint. However, only the ARS Defendants have appeared.

[3] The factual allegations taken from the Amended Complaint and the exhibits attached thereto are accepted as true for purposes of this motion to dismiss. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

Plaintiff is an art publisher that worked with the late artist Robert Indiana to create and produce two images: one called "LOVE" and the other, "HOPE."  Am. Compl. ¶¶ 1-2.  The LOVE image consists of four colored letters with the first two letters ("LO") stacked atop the remaining letters ("VE") and the "O" tilted outward to the right.  *Id.* ¶ 20; *see id.* ¶ 18.  Indiana first published the LOVE image in the 1960s, when it gained global popularity through display on commercial products, paintings, and outdoor sculptures.  *Id.* ¶¶ 18-20.  None of those publications was made with a copyright notice.  *Id.* ¶¶ 19-22.

In 2007, Plaintiff and Indiana created the HOPE image, "similar to the LOVE image," with the first two of four colored letters positioned above the last two letters.  *Id.* ¶¶ 50-52.  Plaintiff and Indiana began producing the HOPE image in 2008, when it quickly became well known for its connection to former President Barack Obama's presidential campaign.  *Id.* ¶¶ 53-55, 59-60. At that time, the HOPE image began "competing with the LOVE image."  *Id.* ¶ 55; *see id.* ¶¶ 54, 60-61.

Plaintiff avers that neither the "HOPE image, nor the LOVE image, ha[s] ever been copyrighted.  Nor could they [be], as the law will not allow for the copyrighting of a word, regardless of form or aggrandizement."  *Id.* ¶¶ 4, 19 (further alleging that "the image LOVE is in the public domain").  Nonetheless, Indiana entered into two contracts with Morgan in the 1990s, pursuant to which Indiana purported to convey to Morgan all "copyright, trademark, and other rights" in LOVE—in addition to "the exclusive right to reproduce, promote, and sell" the LOVE image and "produce and fabricate," own, and sell sculptures of LOVE.  *Id.* ¶ 24.  Under those agreements, Indiana also conveyed to Morgan the purported right to sue for copyright infringement of the LOVE image.  *Id.* ¶ 25.

Plaintiff claims that, despite any supposed transfer of copyright from Indiana to Morgan, "Defendants well knew" and "certainly know now" that LOVE was not, in fact, protected by

copyright.  *Id.* ¶¶ 4, 25, 39.  Nevertheless, "Defendants . . . combined together for at least two decades to fraudulently represent that they had and still have a copyright on the LOVE image." *Id.* ¶ 4.  "The Defendants, through ARS, have been fraudulently licensing their falsely-claimed copyright to the LOVE image . . . to collect millions of dollars paid by licensees" to use the image. *Id.* ¶ 4; *see id.* ¶¶ 26-44; *id.* Ex. A ("ARS/Morgan Agreement," dated March 1, 1999) ("authoriz[ing] ARS to act as a . . . representative worldwide with regard to licensing third parties for reproductions of the Works of Robert Indiana").  Accordingly, Defendants' conduct continues to harm American Image, which is authorized to "produce and market the HOPE [i]mage" and "is in direct competition with the LOVE image."  Am. Compl. ¶¶ 8, 58; *see id.* Ex. B ("HOPE Agreement").

## II.    LEGAL STANDARD

On a motion to dismiss, a court "accept[s] as true" "all well-pleaded factual allegations" and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citations omitted).  The Court may consider both "the facts and allegations . . . contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).  "[B]efore materials outside the record may become the basis for a dismissal," however, "several conditions must be met."

*Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*

In adjudicating the ARS Defendants' motion, the Court considers the ARS/Morgan Agreement and the HOPE Agreement. Both are "incorporated into the complaint by reference" and "attached" to the Amended Complaint as exhibits. *Blue Tree Hotels*, 369 F.3d at 217; *see* ARS/Morgan Agreement; HOPE Agreement; *see*, *e.g.*, Am. Compl. ¶¶ 32, 57. The Court does not, however, consider the purported agreement between Morgan and Indiana filed by the ARS Defendants, ECF No. 28 (Sholder Decl.), Ex. A, as it is "unclear" whether that exhibit is "a true and correct copy." *United States ex rel. Foreman*, 19 F.4th at 109 (finding error where documents submitted by the defendants that related to the Complaint were considered despite questions "as to [their] authenticity and status" having been raised). Although Plaintiff alleges that Morgan and Indiana entered into an agreement that generally matches the description of this exhibit,[4] he describes the ARS Defendants' version as "unilaterally redacted" and "not signed by Morgan." *See* ECF No. 30 (Opp.) at 4 n.4. "In light of possible disputes as to" authenticity, the Court does not consider the agreement between Morgan and Indiana submitted by Defendants.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[4]*Compare* Am. Compl. ¶ 24 (alleging that Morgan and Indiana entered into a contract whereby "Indiana purported to convey to Morgan all 'copyright, trademark, and other rights' in certain images (LOVE, AHAVA, AMOR, NUMBERS, and YALE)") *with* Sholder Decl. Ex. A (agreement under which Indiana purportedly "transfer[ed] and assign[ed] unto [Morgan], all . . . trademarks, copyrights and other rights . . . in and to the *LOVE, AHAVA* (in Hebrew letters), *AMOR*, *Numbers* and *YALE* Images").

678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Nor does it suffice for a plaintiff to allege "facts that are 'merely consistent with' a defendant's liability," *id.* (citation omitted); the complaint must "nudge [the plaintiff's] claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  Indeed, Plaintiff "must provide the grounds upon which [Plaintiff's] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (quoting *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011)).

### III.    DISCUSSION

The ARS Defendants seek dismissal of Plaintiff's Lanham Act claim on the grounds that "claims such as Plaintiff's asserting misrepresentations regarding copyrights are not redressable under the Lanham Act"; Plaintiff "does not plausibly allege causation"; and Plaintiff fails to allege that "Defendants misrepresented LOVE's copyright status in commercial advertising or promotion."  ECF No. 27 (Br.) at 1-2, 11-18 (cleaned up).  Plaintiff's RICO claims are also challenged for failure to plead proximate causation.  *Id.* at 2, 23-25.  In addition, the ARS Defendants argue that Plaintiff's "RICO allegations sound in fraud and must satisfy [Federal] Rule [of Civil Procedure] 9(b), yet [Plaintiff] points to nothing plausibly suggesting—let alone pleading with particularity—that the ARS Defendants were aware of any fraud."  *Id.* at 2, 19-23, 25.  Finally, the ARS Defendants contend that all of Plaintiff's claims are untimely.  *Id.* at 1, 5-11.

The Court agrees that Plaintiff fails to state a claim under the Lanham Act or RICO.  Moreover, Plaintiff's claims are untimely.  Because Plaintiff's claims must be dismissed on these grounds, the Court does not address the ARS Defendants' argument that Plaintiff's RICO claims fail to satisfy Rule 9(b)'s pleading requirements.

## A. Plaintiff's Lanham Act Claim

### 1. Plaintiff Fails to State a Claim under the Lanham Act

Plaintiff pleads his Lanham Act claim under two theories: false designation of origin and false advertising or promotion pursuant to 15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B). Am. Compl. ¶¶ 62-71; *see id.* ¶¶ 87-98. Specifically, Plaintiff alleges that Defendants made false representations (1) in violation of § 1125(a)(1)(A), by claiming that "Morgan and ARS ow[n]ed the copyright to the LOVE image," and (2) in violation of § 1125(a)(1)(B), by claiming "that ARS was authorized to license said copyright." *Id.* ¶ 64. Under either theory, Plaintiff's Lanham Act claim must be dismissed.

A cause of action under § 1125(a)(1) lies for "any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, [which] misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B).

Section 1125(a)(1)(A) forbids "reverse passing off," which consists of a "producer misrepresent[ing] someone else's goods or services as his own." *Dastar Corp. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). Section 1125(a)(1)(A) also prohibits "false endorsement"—*i.e.*, "falsely implying the endorsement" or "approval" "of a product or service" by another. *Avalos v. IAC/Interactivecorp.*, No. 13 Civ. 8351 (JMF), 2014 WL 5493242, at *4 (S.D.N.Y. Oct. 30, 2014). Plaintiff alleges that Defendants' "false assertions" that "the LOVE image is copyrighted to Morgan and to ARS" "falsely designat[ed] the origin of LOVE." Am.

Compl. ¶¶ 64-65, 67.  According to Plaintiff, this conduct "deceives the general public and the relevant market that the LOVE image was the subject of a copyright when it is not." *Id.* ¶ 69.

In *Dastar*, the Supreme Court held that "false designation of . . . authorship is not cognizable under [§ 1125(a)(1)(A)]" for "communicative products" that are capable of protection by copyright. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (holding that *Dastar* foreclosed § 1125(a)(1)(A) claims pertaining to the source, licensing, and authorship of a photojournalist's photographs of earthquake destruction in Haiti); *see Dastar*, 539 U.S. at 37. Instead, cognizable misrepresentations regarding the "origin of goods" under § 1125(a)(1)(A) "refer[] to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37.

Plaintiff's argument that *Dastar* does not bar his false designation claim fails.  Plaintiff maintains that "McKenzie is not alleging false claims of authorship," as "[n]obody is claiming that Morgan and ARS are the authors" of Indiana's works.  Opp. 12.  However, *Dastar* applies to claims "for false representation of 'affiliation' between the author and a distributor of communicative products," even if through "a false assertion of license."  *Morel*, 769 F. Supp. 2d at 307; *see also* 17 U.S.C. § 202 ("Ownership of a copyright, or of any exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied."). That is precisely what Plaintiff avers: Defendants "deceive[] the general public and the relevant market" that they have a copyright to LOVE—*i.e.*, that Indiana (or his estate) provided them with the right to license products bearing the LOVE image.  Am. Compl. ¶ 69.

*Dastar* also bars Plaintiff's false advertising theory.  "To establish a false advertising claim under [§ 1125(a)(1)(B)], the plaintiff must demonstrate . . . that the defendants 'misrepresented an inherent quality or characteristic' of the product."  *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997) (quoting *Nat'l Assoc. of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904,

917 (2d Cir. 1988) (internal quotation marks omitted)).  "Statements about whether a defendant has the right to use or distribute a work are not considered material . . . ." *Restellini v. Wildenstein Plattner Inst., Inc.*, No. 20 Civ. 4388 (AT), 2021 WL 4340824, at *7-8 (S.D.N.Y. Sept. 22, 2021) (concluding that a false statement "must affect a consumer's buying decisions" to be material and that a misrepresentation about the copyrightability of a work is not cognizable under § 1125(a)(1)(B), in light of *Dastar*).  Accordingly, Plaintiff has not alleged an actionable misrepresentation.

Apart from *Dastar*, Plaintiff's Lanham Act claim still fails.  "[A] statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," "and not to any remote cause." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).  Therefore, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[,] and that [] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133; *see Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023).[5]

To allege causation, Plaintiff avers that "HOPE and LOVE, as images, have no other competition than each other."  Am. Compl. ¶ 91.  Plaintiff also claims that Defendants' use of "the false copyright assertion in relation to its many licenses of the LOVE image has greatly enhanced the revenues derived from the LOVE image, and made it appear more valuable than the HOPE image given its supposedly copyright-protected status and the extensive public visibility it has acquired." *Id.* ¶ 94.  "That enhancement has in turn injured the business and property of [Plaintiff]"

---

[5] For purposes of this analysis, the Court assumes, without deciding, that Plaintiff has alleged actionable misrepresentations "in commercial advertising or promotion" under the Lanham Act. 15 U.S.C. § 1125(a)(1)(B).

"in that it has been deprived of many licensees for the HOPE image . . . and because the HOPE image could not compete with . . . LOVE." *Id.* ¶¶ 95-96.

Yet Plaintiff fails to allege, as he must, that "consumers [*e.g.*, potential licensees] were deceived by the fraudulent [copyright]" and "also that that deception" is what "led consumers to 'withhold trade'" from Plaintiff. *Avalos*, 2014 WL 5493242, at *5 (citing *Lexmark*, 572 U.S. at 133).[6] Accordingly, the Court dismisses Plaintiff's Lanham Act claim. *See*, *e.g.*, *PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*, 629 F. Supp. 3d 116, 130 (S.D.N.Y. 2022) (dismissing false advertising counterclaim on the ground that defendant "[did] not—and, indeed, [could not]—allege that [plaintiff's] 'deception of consumers cause[d] them to withhold trade' from [defendant]" (quoting *Lexmark*, 572 U.S. at 133)); *Avalos*, 2014 WL 5493242, at *5 (dismissing false advertising claim, as plaintiff failed "to allege not only that consumers were deceived by the fraudulent photographs . . . on Defendants' websites, but also that that deception . . . led consumers to 'withhold trade' from [plaintiff] by, for example, visiting *its* websites less often" (citing *Lexmark*, 572 U.S. at 133)); *see also Beata Music LLC v. Danelli*, No. 18 Civ. 6354 (JGK), 2022 WL 61862, at *10 (S.D.N.Y. Jan. 6, 2022) (holding that counterclaimant "failed to satisfy the test for statutory standing for a claim of false designation of origin" under *Lexmark*).

**2. Laches Bars Plaintiff's Lanham Act Claim**

Plaintiff's Lanham Act claim is also barred under the doctrine of laches. The Lanham Act does not provide a limitations period. Courts in this Circuit apply New York's six-year limitations

---

[6] Nor has Plaintiff plausibly alleged that LOVE and HOPE compete in a "two-player market" where "injury may be presumed." *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 342 (S.D.N.Y. 2019), *on reconsideration*, 394 F. Supp. 3d 368 (S.D.N.Y. 2019). The Second Circuit "has expressly disfavored presumptions of harm in cases where the products are not obviously in competition or where the defendant's advertisements make no direct reference to any competitor's products." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 696 (2d Cir. 1994).

period for fraud to Lanham Act designation of origin and false advertising claims under 15 U.S.C. § 1125(a).  *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (affirming "the district court determin[ation], consistent with virtually every district court in this Circuit that has addressed the question, that a six year fraud statute is applicable in the context of misleading advertisement" (citing N.Y. Civ. Prac. L. & R. 213(8))).  "This six-year period will begin to run once the plaintiff is aware of the facts underlying its cause of action."  *Deere & Co. v. MTD Holdings Inc.*, No. 00 Civ. 5936 (LMM), 2004 WL 324890, at *18 (S.D.N.Y. Feb. 19, 2004).  For Lanham Act claims brought before the six-year statute of limitations has elapsed, "there is no presumption of laches and the burden remains on the defendant to prove the defense."  *Conopco, Inc.*, 95 F.3d at 191.  Once the limitations period has run, however, "a presumption of laches will apply and [the] plaintiff must show why the laches defense ought not be applied in the case."  *Id.*

To prove that laches precludes a plaintiff's claim, a defendant must demonstrate that "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay."  *Fitzpatrick v. Sony-BMG Music Ent., Inc.*, No. 07 Civ. 2933 (SAS), 2007 WL 2398801, at *2 (S.D.N.Y. Aug. 15, 2007) (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)).  "With regards to the [knowledge] requirement[,] '[t]he opposing party need not have had actual knowledge of the claim; rather, it is sufficient that the opposing party should have known.'"  *Busher v. Barry*, No. 14 Civ. 4322 (NSR), 2016 WL 1249612, at *5 (S.D.N.Y. Mar. 28, 2016) (quoting *Bakalar v. Vavra*, 819 F. Supp. 2d 293, 303 (S.D.N.Y. 2011)).  Although "[i]n general, the defense of laches is not raised in a motion to dismiss[,] . . . . in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss."  *Fitzpatrick*, 2007 WL 2398801, at *3 (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999)).

The ARS Defendants argue that "Plaintiff could have learned of the supposed false advertising or unfair competition decades ago given his alleged position in the art community, purported connection to Indiana and LOVE, and the alleged ubiquity of the purportedly false representations over which he has brought suit." Br. 10. Furthermore, ARS "certainly has been prejudiced by Plaintiff's failure to object to its practices until February 2022," when Plaintiff filed this lawsuit, given that it "has been licensing LOVE . . . since *1999*." *Id.* at 10-11. The ARS Defendants also state that their inability to obtain "important evidence from Indiana" due to his death in 2018 "caus[es] further prejudice." *Id.* at 11.

Plaintiff barely addresses the ARS Defendants' laches argument. *See* Opp. 15-16. In the Amended Complaint, however, Plaintiff avers that he "was unaware of the fraudulently concocted use of a false assertion of a 'copyrighted' LOVE image until . . . February 25, 2020," when Defendant Hicks was deposed in connection with a separate lawsuit involving McKenzie and Morgan. Am. Compl. ¶ 101.[7] Thereafter, Plaintiff "investigate[d]" the copyright status of the LOVE image "with the U.S. Copyright [O]ffice [and] learned that there was no copyright registered." *Id.*

Other allegations—including that, since 1999, Defendants made "repeated" and "continuous" false assertions of copyright, *see id.* ¶¶ 23-24, 32-33, 76-77—undermine Plaintiff's position. Plaintiff admits that, "[b]efore the Hicks deposition [in 2020], [he] had seen the public advertising, observed that the large auction house and others all referred to the LOVE image *as being copyrighted to Morgan* and thus he believed . . . that *LOVE was copyrighted to Morgan*." *Id.* ¶ 102 (emphasis added). In addition, at some point prior to Indiana's death, Plaintiff "notice[d] that virtually the entire artworld was marketing the LOVE image with the assertion that it was

---

[7] *See Morgan Art Found. Ltd. v. McKenzie*, No. 18 Civ. 4438 (S.D.N.Y., filed May 18, 2018).

subject to a Morgan 'copyright.'"  *Id.* ¶ 48.  Plaintiff even asserts that, in *2007*, thirteen years before the Hicks deposition, "Indiana would not authorize" him to produce a LOVE portfolio because Indiana "believed that Morgan had a copyright on the LOVE image based upon Morgan's fraudulent representations to him that they had acquired one through his agreements with them." *Id.* ¶¶ 98-99.

Plaintiff further concedes that he was aware of "repeated publications of the LOVE image over many years [prior to 1999] *without any notice of copyright*."  *Id.* ¶ 21 (emphasis added); *see id.* ¶¶ 18-20.  It is therefore unclear why Plaintiff, a self-described "prolific art publisher" who worked for many years with Indiana to "produce[] and market[]" LOVE, did not inquire into LOVE's copyright status sooner.  *Id.* ¶¶ 1-2.  In any event, although Plaintiff did not initiate this action until February 27, 2022, he "knew" "or should have known" of any Lanham Act claim by no later than 2007.  *Fitzpatrick*, 2007 WL 2398801, at *3; *see Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 32 (E.D.N.Y. 2009).  A presumption of laches therefore applies.

Nor does Plaintiff explain how the Hicks deposition introduced "previously unknowable facts."  *Rexall Sundown, Inc.*, 651 F. Supp. 2d at 32.  The copyright registration status of the LOVE image was publicly available information that Plaintiff could, and ultimately did, uncover on his own.  *See id.* at 31-32 (holding that defendant had constructive knowledge of his counterclaims where "proceedings may. . . have brought . . . issue to defendant's attention" but did not "contain[] new information that defendant could not have found on its own"); Am. Compl. ¶ 101.  Plaintiff simply offers "no explanation for the delay in filing this action, and this Court, therefore, finds that the delay is inexcusable."  *Rexall Sundown, Inc.*, 651 F. Supp. 2d at 31-32.  In addition, Plaintiff "fails to adequately rebut" the ARS Defendants' claims of prejudice based on their having continuously licensed LOVE since 1999 and the loss of evidence due to Indiana's death.  *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 F. App'x 362, 365-66 (2d Cir. 2010) (affirming grant

of summary judgment on basis of laches and explaining that defendant-appellee "strengthen[ed] the presumption of prejudice in its favor by noting its continuous use of the [product] . . . for nearly half of a century" and that "individuals who would have knowledge regarding the issues relevant to this case are now dead"); *see* Opp. 10-11.

Therefore, even if Plaintiff had alleged a cognizable Lanham Act claim—and, as set forth *supra*, he has not—that claim would be barred by laches.

### B. Plaintiff's RICO Claims

#### 1. Plaintiff Fails to State a Claim under RICO

Plaintiff alleges that, in violation of the civil RICO statute, 18 U.S.C. § 1964, Defendants engaged in a racketeering enterprise under 18 U.S.C. § 1962(c) and a racketeering conspiracy under § 1962(d).  Am. Compl. ¶¶ 72-114.  To state a civil RICO claim based on a violation of § 1962(c), Plaintiff must allege "'(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).  "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Id.*

In this case, the alleged racketeering enterprise centers on Defendants' "scheme to fraudulently sell licenses" to use the LOVE image to "many hundreds of licensees even though [Defendants] . . . knew that neither Morgan nor ARS had a copyright on the LOVE image."  Am. Compl. ¶ 75.  Plaintiff avers that, in furtherance of this alleged enterprise, Defendants engaged in a pattern of RICO predicate acts of wire fraud, mail fraud, money laundering, and illegal monetary transactions.  *Id.* ¶¶ 75-86.  These acts were, in sum: "repeatedly" making false assertions of copyright protection of LOVE "publicly" and in connection with licensing agreements; requiring licensees to affix a copyright notice on LOVE products; and transmitting and depositing licensing

fees and royalties.  *Id.*  Plaintiff also alleges that Defendants "conspire[d] to" commit such a RICO violation.  18 U.S.C. § 1962(d); *see* Am. Compl. ¶¶ 106-114.

"Before a RICO claim can be established, the plaintiff must demonstrate a cause of action under civil RICO or RICO standing."  *Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop., Inc.*, No. 14 Civ. 00145 (ALC), 2017 WL 1929506, at *3 (S.D.N.Y. May 9, 2017).  "In order to show such standing, [P]laintiff must plead: (1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation."  *Id.* (internal quotation marks omitted).

With respect to causation, Plaintiff must "show[] that the defendant's violation not only was a 'but for' cause of [Plaintiff's] injury, but . . . the proximate cause as well."  *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (2006); *see European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 149, 151 (2d Cir. 2014).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Grp. LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271).

Plaintiff alleges, in essence, the following injuries: (1) losses in revenue and sales because the HOPE image "did not have the supposed copyright protection that the LOVE image had, making LOVE the more profitable image"; and (2) a "substantial loss" to American Image by "being denied the right to continue making LOVE artworks."  Am. Compl. ¶¶ 8, 96-97, 100; *see id.* ¶¶ 3-4, 70-71, 87-99.  Plaintiff fails, however, to aver that these injuries were proximately caused by any of the alleged RICO predicate acts under § 1962(c) or (d).  Instead, the predicate acts underlying the alleged racketeering enterprise "to fraudulently sell licenses," and the conspiracy to obtain money "by the false" pretense that Defendants "had a copyright on the LOVE

image," were solely directed at potential and current *licensees* of a fraudulent copyright. *Id.* ¶¶ 75, 105; *see id.* ¶¶ 76-86; *see*, *e.g.*, *id.* ¶ 76(b) ("ARS and Morgan have made this false representation of copyright ownership to . . . individuals and entities in order to induce them to enter into licensing agreements with ARS to use the LOVE image on their products and they have done so using interstate and foreign wire communications to make such assertions to the licensees.").

Proximate cause is not sufficiently alleged where, as here, a plaintiff's "injuries [] were not caused directly by the [RICO predicate acts], and thus were not caused 'by reason of' [them]." *Hemi Grp.*, 559 U.S. at 18; *see Anza*, 547 U.S. at 457-58; *Holmes*, 503 U.S. at 272-74; *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 144 (2d Cir. 2018). In *Anza v. Ideal Steel Supply Corp.*, the Supreme Court required dismissal of the plaintiff's § 1962(c) RICO claim where the plaintiff alleged that the defendant, a competing business, had "harmed it by defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers." 547 U.S. at 457-58. There, the plaintiff's alleged lost sales were not proximately caused by the defendant's scheme because the "direct victim of this conduct was the State of New York, not [the plaintiff]." *Id.* at 458. And the "cause of [the plaintiff's] asserted harms . . . [was] a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* The plaintiff's lost sales also "could have resulted from factors other than petitioners' alleged acts of fraud." *Id.* at 459.

Here, too, "[t]he cause of [Plaintiff's] asserted harms" is "entirely distinct from the alleged RICO violation[s]" arising from Defendants' "scheme to fraudulently sell licenses." *Id.* at 458; Am. Compl. ¶ 75. As in *Anza*, there are "any number of reasons unconnected to the asserted pattern of fraud" why Plaintiff could have experienced lost sales or diminished marketability relating to the HOPE image vis-à-vis LOVE. *Anza*, 547 U.S. at 458. For example, HOPE was known for its connection to the Obama campaign, and its popularity may have diminished simply

because that campaign ended. *See* Am. Compl. ¶¶ 53-55. LOVE, in contrast, "gain[ed] a wide public following and notoriety" "decades" prior to the commencement of any fraudulent scheme by Defendants. *Id.* ¶¶ 18-21. Thus, the LOVE image's strong "presence in the market," *Id.* ¶ 90, may have stemmed from reasons unrelated to any unfair market advantage.

With respect to the harm allegedly caused by Plaintiff's inability to market the LOVE image, Plaintiff's injury is even more tenuous than that alleged in *Anza*. Plaintiff did not attempt to market LOVE, nor could Plaintiff have done so, since the right to market the image (whether it was copyrighted or not) had been conveyed to Morgan. *Id.* ¶¶ 23-24. At best, it was *Indiana's conveyance of the rights to market the image to Morgan*—and thus, the intervening act of a third party (*i.e.*, Indiana), not the predicate acts of any RICO scheme or even Defendants' allegedly false copyright assertions—that ultimately caused any alleged inability to profit from use of the LOVE image. *See*, *e.g.*, *Avalos*, 2014 WL 5493242, at *6 (holding "allegations fail[ed] to establish proximate cause . . . because 'when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions'" (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994))); *In re Crazy Eddie Sec. Litig.*, 714 F. Supp. 1285, 1290-91 (E.D.N.Y. 1989) (dismissing claims under § 1962(c) and (d) where predicate acts from the alleged "scheme to defraud shareholders and others relying on . . . public financial information" were not directed at claimant, but rather, at "the shareholders and the investing public").

Plaintiff's reliance on *Alix v. McKinsey & Co.*, 23 F.4th 196 (2d Cir. 2022), is misplaced. *See* Opp. 24-25. In *Alix*, AlixPartners LLP ("AlixPartners") and McKinsey & Co. ("McKinsey") were "major competitors in a niche bankruptcy advising market involving estates in excess of one billion dollars." 23 F.4th at 199. The plaintiff, an assignee of AlixPartners, alleged that "McKinsey secured lucrative consulting assignments in this market by knowingly and repeatedly

filing disclosure statements in the Bankruptcy Court containing incomplete, misleading, or false representations." *Id.* at 199-200.    The plaintiff further averred that "this pattern of misrepresentations . . . resulted in injury to AlixPartners through the loss of engagements it otherwise would have secured and of substantial revenues those assignments would have generated, as well as through the loss of the opportunity to compete for them in an unrigged market." *Id.* at 200.

In holding that the plaintiff had sufficiently alleged proximate cause under RICO, the Second Circuit distinguished *Alix* from prior decisions, including *Anza* and *Empire Merchants*, *supra*, based on "special considerations." *Alix*, 23 F.4th at 204-06 (clarifying that *Alix* involved misconduct that targeted the federal judiciary).    In addition, the court explained that the bankruptcy court had already awarded assignments to McKinsey, therefore making it less likely, unlike in *Anza* and *Empire Merchants*, that intervening events might have broken the causal chain.  *See id.* at 205-06.  The Second Circuit further acknowledged that, had the bankruptcy court known of McKinsey's alleged fraud, there was a statistical probability, based on past practices in the market, that "AlixPartners would have received a 24% share of assignments and resulting revenue." *Id.* at 206.

The instant case therefore differs from *Alix* in numerous respects.  In sum, although the Court must "ordinarily accept well-pled allegations as true," "in the RICO context, '[t]he element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.'"  *Empire Merchants*, 902 F.3d at 143 (quoting *Anza*, 547 U.S. at 460).  This is precisely such a case, and dismissal is warranted.

### 2.    Plaintiff's RICO Claims Are Untimely

Plaintiff's RICO claims are also dismissed on the independent ground that they are untimely.  "RICO claims are subject to a four-year statute of limitations." *Koch v. Christie's Int'l*

*PLC*, 699 F.3d 141, 148 (2d Cir. 2012).  "In a RICO case, the first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress."  *Id.* at 150.  "The court then determines when the plaintiff 'discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point.'"  *Id.* (quoting *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)).  "[O]nce there are sufficient 'storm warnings' to trigger the duty to inquire," the statute of limitations begins to run.  *Id.* at 153.  "In such a case, knowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured is dispositive," even where the extent of the RICO scheme is not discovered until a later date.  *Id.*

Plaintiff alleges that Defendants' fraudulent scheme began in 1999, when (1) Indiana and Morgan entered into contracts conveying Indiana's purported copyright in LOVE to Morgan, and (2) Morgan and ARS entered into the ARS/Morgan Agreement to license LOVE and other Indiana works.  Am. Compl. ¶¶ 76, 77; *see id.* ¶¶ 32-35.  Even if Plaintiff's injuries were cognizable under RICO (and as set forth *supra*, they are not), those injuries accrued no later than 2007, when Indiana refused to permit Plaintiff to market the LOVE image due to Morgan's purported copyright.  *See* Am. Compl. ¶¶ 98-99.  Upon learning of this roadblock, Plaintiff had "inquiry notice" of his purported injury.  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (2d Cir. 2011) (quoting *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)).  He "knew or should have known" that Morgan's claimed copyright to LOVE was allegedly fraudulent.  *Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887 (2d Cir. 1993) ("*LILCO*").  Indeed, as explained with respect to Plaintiff's Lanham Act claim, Plaintiff had notice of his alleged injuries for well over a decade before he brought this action.  *Koch*, 699 F.3d at 153 (finding plaintiff's RICO claim time-barred where, more than four years prior to bringing suit, plaintiff had been aware of numerous

facts that "would suggest to a reasonably intelligent person" that the allegedly counterfeit product "was not authentic").

Plaintiff contends that he can "claim and receive damages for any harm caused by conduct occurring in the last four years before the filing of this action" (*i.e.*, prior to the expiration of the statute of limitations). Opp. 16-17. This argument is misguided. In purported support, Plaintiff cites *Bingham v. Zolt*, in which the Second Circuit held that a fraud perpetuated on the estate of Bob Marley constituted a "continuing series of fraudulent actions." 66 F.3d 553, 561 (2d Cir. 1995). In *Bingham*, the defendants employed "[a] variety of schemes" "involving frequent misappropriations of discrete amounts of money from different sources," such that "*each illegal diversion constituted a new and independent legally cognizable injury*" to the estate. *Id.* (emphasis added). Therefore, "[a]s long as separate and independent injuries continue[d] to flow from the underlying RICO violations—regardless of when those violations occurred—plaintiff may wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within the four-year 'window' before suit was filed, together, of course, with any provable future damages." *Id.* at 560.

The *Bingham* Court distinguished these harms from those alleged in other Second Circuit RICO cases such as *LILCO*, 6 F.3d at 887, in which a single, discrete injury had triggered the statute of limitations. *See Bingham*, 66 F.3d at 560-61. In *LILCO*, the statute of limitations began to run "when [the plaintiff, LILCO] learned, or should have learned" that generators it had purchased were defective, which the court determined was the date it had received its last shipment of generators. *Bingham*, 66 F.3d at 560; *see LILCO*, 6 F.3d at 879, 887. The "financial losses suffered by LILCO" when it tested the generators years later and discovered they were defective "were not independent from" LILCO's original injury of "receiving defective generators."

*Bingham*, 66 F.3d at 560.  Therefore, LILCO's "non-independent injuries [did] not cause a new limitations period to accrue."  *Id.*

Similarly, here, if Plaintiff were able to allege any cognizable harm under RICO, that harm would arise from Plaintiff's original alleged injury in relation to Defendants' "scheme to fraudulently sell licenses" and conspiracy to profit from the same, of which Plaintiff was on inquiry notice by no later than 2007.  Am. Compl. ¶¶ 75, 105; *see, e.g.*, *Merrill Lynch*, 154 F.3d at 59-60 (holding that a defendant's subsequent communications in furtherance of a fraudulent scheme, including the collection of annual fees in later years, were not a "separate and distinct fraud creating new injuries" under RICO).  It is of no moment that Defendants' alleged fraud was not discovered until February 25, 2020, as the duty to inquire arose years earlier.  Am. Compl. ¶ 101.

Plaintiff's argument that the statute of limitations "is simply not an issue for disposition under Rule 12(b)(6)" is unavailing.  Opp. 17.  To the contrary, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted), *aff'd*, 113 F.3d 1229, 1997 WL 259746 (2d Cir. 1997); *see, e.g.*, *Koch*, 699 F.3d at 151 (affirming dismissal of RICO claim as untimely); *Merrill Lynch*, 154 F.3d at 60 (same).  Dismissal is likewise appropriate here.[8]

## DISMISSAL WITH PREJUDICE

Finally, Defendants seek dismissal of Plaintiff's claims with prejudice.  *See* Br. 31; ECF No. 32 at 14.  "While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,'" the Court need not "grant a request that was not made."  *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)).  Plaintiff did not "request[] an

---

[8] ARS Defendants raise an alternative argument that collateral estoppel bars Plaintiff from contending he was unaware of any injuries prior to expiration of the statute of limitations.  *See* Br. 9-10. The Court need not reach that argument because it dismisses the RICO claims as untimely on other grounds.

opportunity to file an amended pleading." *Horoshko v. Citibank*, N.A., 373 F.3d 248, 249 (2d Cir. 2004) ("Because an amendment is not warranted absent some indication as to what [Plaintiff] might add to [his] complaint in order to make it viable, the District Court [i]s under no obligation to provide [Plaintiff] with leave to amend [his] complaint, much less provide such leave *sua sponte*." (citations and internal quotation marks omitted)).  Indeed, upon granting leave to file the Amended Complaint, the Court warned that it would be "Plaintiff's last opportunity to amend in response to any issue raised in the parties' pre-motion letters," ECF No. 22, including the timeliness of Plaintiff's claims and the adequacy of his Lanham Act and RICO allegations, *see* ECF No. 20.  Plaintiff has not sought leave to further amend.  His claims are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the ARS Defendants' motion to dismiss is GRANTED, and the claims against the ARS Defendants in Plaintiff's Amended Complaint are DISMISSED with prejudice.

The Clerk of Court is directed to terminate ECF No. 26.


SO ORDERED.

Dated: November 15, 2024
    New York, New York


_____
JENNIFER H. REARDEN
United States District Judge